**In the Matter of Aaron FLECK, Sidney Fleck, and Charles Fleck.**

**CLEVELAND BAR ASSOCIATION, Appellee,**

v.

**Sidney FLECK, Charles Fleck and Aaron Fleck, Appellants.**

**No. 19386.**

United States Court of Appeals Sixth Circuit.

Dec. 4, 1969.

Bennett Yanowitz, Cleveland, Ohio, for appellants; Kahn, Kleinman, Yanowitz & Annan, Cleveland, Ohio, on brief.

Burt Fulton, Cleveland, Ohio, for appellee.

Before PHILLIPS, Chief Judge, CELEBREZZE, Circuit Judge, and TAYLOR *, District Judge.

PER CURIAM.

The Supreme Court of Ohio suspended indefinitely from the practice of law three Cleveland attorneys, a father and two sons. Cleveland Bar Assn. v. Fleck et al., 172 Ohio St. 467, 178 N.E.2d 782, cert. denied, 369 U.S. 861, 82 S.Ct. 948, 8 L.Ed.2d 19, rehearing denied, 370 U.S. 914, 82 S.Ct. 1254, 8 L.Ed.2d 406.

The United States District Court for the Northern District of Ohio, in conformity with its local rules, ordered the three attorneys to show cause why their names should not be stricken from the roll of attorneys admitted to practice before that court. Counsel for the three attorneys and the Cleveland Bar Association agreed that the case would be submitted to the District Court upon the record of the proceedings before the

---

* Honorable Robert L. Taylor, Chief Judge, U. S. District Court for the Eastern District of Tennessee, sitting by designation.

Ohio Board of Commissioners, the Supreme Court of Ohio, the Supreme Court of the United States, briefs of counsel in those proceedings and briefs and arguments of counsel before the District Court. The three attorneys elected not to introduce any additional evidence in the District Court, either in the form of oral and written testimony or exhibits, although they were afforded an opportunity to do so.

Chief District Judge Girard E. Kalbfleisch made an independent determination of the facts concerning the conduct of the three attorneys and whether that conduct was so grievous as to require disbarment. An order was entered striking the names of the three attorneys from the roll of attorneys eligible to practice before the District Court. We find that the District Court complied with the standards of independent determination as set forth by the Supreme Court in In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117, and Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342.

The findings of fact of the District Judge are attached as Appendix A to this opinion. Reference is made to the appendix for a more comprehensive statement of details.

■ Unlike the facts in *In re Ruffalo, supra,* respondents were fully apprised of the two charges set forth in the complaint filed by the Cleveland Bar Association. These charges never varied and were the charges before the Supreme Court of Ohio when it reached its conclusion that the three attorneys should be suspended indefinitely. These same two charges and the evidence introduced before the Board of Commissioners were before the District Court when it made its independent determination. We conclude that these three attorneys were not deprived of due process.

■ We further hold that the present case is distinguishable on its facts from United Mine Workers of America Dist. 12 v. Illinois State Bar Assn., 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426,

and Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89. We conclude that the record supports the findings of the District Court that the practice of these attorneys of having clients borrow money for their attorneys' fees in Workmen's Compensation cases from the Hamlin Finance Company (a client of the same law firm) and then applying to have the amount of the loan included in a lump sum computation by the State Industrial Commission was a deliberate scheme to obtain attorneys' fees in violation of § 4123.57 (B) of the Ohio Revised Code.

Affirmed.

## APPENDIX A

FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE UNITED STATES DISTRICT COURT.

(Filed October 23, 1968.)

KALBFLEISCH, Chief Judge.

This matter is before the Court pursuant to an order that respondents show cause why they should not be disbarred from the practice of law in this Court. The respondents were indefinitely suspended from the practice of law in Ohio on December 6, 1961. (Cleveland Bar Association v. Fleck et al., 172 Ohio St. 467, 178 N.E.2d 782.) On June 15, 1962 respondents were suspended forthwith from the practice of law in this Court, and pursuant to Rule 1(E) of the Rules of this Court respondents were ordered to show cause why they should not also be disbarred from practice in this court. Rule 1(E) provides in part:

*"Disbarment and Discipline.* Any member of the bar of this court may for good cause shown and after an opportunity has been given him to be heard, be disbarred, suspended from practice for a definite time, reprimanded, or subjected to such other discipline as the court may deem proper.

# 1042

Whenever it is made to appear to the court that any member of its bar has been disbarred or suspended from practice or convicted of a felony in any other court he shall be suspended forthwith from practice before this court and, unless upon notice mailed to him at his last known place of residence he shows good cause to the contrary within ten days, there shall be entered an order of disbarment, or of suspension, for such time as the court shall fix."

The natural effect of a state court disbarment is to destroy the fair private and professional character of an attorney, which fair character requirement is a continuing prerequisite to practice in the federal courts. Selling v. Radford, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585. State court disbarment is not conclusively binding on the federal courts, however, and disbarment by the state court does not result in automatic disbarment by the federal court. This Court is required to determine for itself the facts of the respondents' conduct and whether that conduct has been so grievous as to require disbarment. Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342; In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117.

The case was submitted to this Court upon the record of disbarment proceedings before the Ohio Board of Commissioners, the Supreme Court of Ohio, the Supreme Court of the United States, and the briefs of counsel in those proceedings and the briefs of counsel in this Court.

The state court record reveals the following:

1. Charles Fleck is the father of Aaron Fleck and Sidney Fleck. Prior to their disbarment by the Ohio Supreme Court, the respondents engaged in the general practice of law in the Cleveland area under the firm name of Fleck and Fleck. The firm enjoyed a substantial practice and it specialized in handling Workmen's Compensation cases.

2. In November of 1959 the Cleveland Bar Association filed a complaint with the Ohio Supreme Court's Board of Commissioners on Grievances and Discipline wherein the respondents were charged with misconduct in the following two respects:

(1) "On or about November 25, 1957, the Respondents entered into a written agreement with Truck Drivers' Union Local No. 407 wherein and whereby the Respondents agreed to represent the individual members of said Union as their attorneys in proceedings before the Industrial Commission of Ohio, and permitted and aided in the distribution of copies of said contract to the individual members of said Union with whom they had no personal relations, said copies containing the telephone number of these respondents, for the purpose of soliciting professional employment from said individual members."

(2) "That after the date of said contract, said Respondents, appearing before the Industrial Commission of Ohio, and presenting claims on behalf of diverse claimants as their attorneys, aided claimants in preparing and permitted and caused them to file papers with the Industrial Commission representing alleged indebtedness of claimants as bona fide, when said Respondents well knew that said representations were false and that said indebtedness was incurred for the sole purpose of paying attorneys' fees to these Respondents. Relator further says that said Respondents well knew that the compensation, the approval of which was sought from the Industrial Commission, would not have been paid on a commuted basis if the Commission had been informed of the fact that it was for the payment of attorneys' fees to them."

3. Pursuant to Rule XXVII of the Rules of the Supreme Court of Ohio (now Rule XVIII per amendment of March 11, 1964), a three-man panel from the Board of Commissioners was convened for the purpose of determining the propriety of the allegations of misconduct filed

against the respondents. A hearing before the panel commenced on March 21, 1960 and several witnesses were called by both the relator and the respondents.

4. With respect to the charge of misconduct resulting from the contract between Local 407 and the respondents, the panel found that for a consideration of $500.00 paid by the Union the respondents entered into a contract with the Union whereby respondents would represent Union members at no cost in certain specified procedures in Workmen's Compensation cases. The contract also provided that:

> "should the individual members wish to retain the services of the Attorneys (Fleck and Fleck) for additional proceedings such as Determination of Permanent Partial Disability, determination of permanent Total Disability, or Settlement of Claims, the attorneys shall not contract with the individual members to charge more than 25% of the award under this section on a contingent fee basis."

5. The panel further found that the respondents charged clients who were not members of Local 407 a one-third contingency fee in cases involving a determination of permanent partial or total disability claims; that the established rate for attorneys' fees in Cleveland for such services was one-third of the award; and therefore respondents were extending a fee preference to the members of Local 407.

6. The panel concluded that the contract with Local 407:

> "constituted an employment by a labor organization under which legal services would be rendered to the members thereof in respect to their individual affairs, and constituted a seeking out of those with claims for personal injuries in order to secure them as clients, contrary to Canons 27, 28, 29 and 35 of the Canons of Professional Ethics."

7. With respect to the second charge of alleged misconduct arising from the commutation of lump sum payments before the Industrial Commission, the panel found that the respondents adopted a plan whereby the clients were asked to apply for loans at the Hamlin Finance Company for the amount of the attorneys' fees. Thereafter the respondents would file C–32 forms with the Industrial Commission praying that the client's lump sum award be commuted to include a sum for the purpose of repaying a loan from the Hamlin Finance Company. Such C–32 applications for a lump sum award did not disclose that the loan with Hamlin had been procured to pay attorneys' fees to the respondents.

8. The panel found that the Industrial Commission would refuse in a lump sum award to commute any amount to pay attorneys' fees; and that although the Industrial Commission had a practice of granting C–32 applications for the purpose of paying loans to finance companies, the C–32 applications seeking commutation of lump sum awards were limited to paying existing debts of the claimant but not attorneys' fees.

9. The panel heard conflicting testimony as to the propriety of such efforts by the respondents to obtain attorneys' fees. A legal counsel for the Industrial Commission testified that in all probability the C–32 applications filed by the respondents would have been granted even if it appeared on the face of the applications that the loans with Hamlin had been negotiated for the purpose of obtaining funds to pay attorneys' fees. A former member of the Industrial Commission testified that the fee arrangement adopted by the respondents was in contravention of Section 4123.57(B) of the Ohio Revised Code since the loan applications were a subterfuge "to get fees to circumvent a hearing by the commission to determine whether or not a fee or how much of a fee should be paid."

10. The panel found the respondents "not guilty of misconduct relating to the alleged making of fraudulent claims and statements to the Industrial Commission of Ohio."

11. The panel submitted its findings to the entire Board of Commissioners along with a recommendation that respondents Sidney Fleck and Charles Fleck be given public reprimands and the respondent Aaron Fleck be suspended indefinitely from the practice of law in Ohio.

12. The Board of Commissioners adopted the report of its panel and certified it to the Ohio Supreme Court on January 13, 1961. Upon receipt of the certified report, the Clerk of the Ohio Supreme Court issued a show cause order to respondents ordering them to show cause why the report of the Board of Commissioners should not be confirmed. In response to the show cause order the respondents filed objections to the findings and recommendations of the Board of Commissioners. On June 24, 1961, respondents filed a brief in support of their objections, wherein respondents declared, at page 21:

"Thus the proceeding before this Court is completely *de novo* except that the record made before the Commissioners constitutes the evidence this Court will consider. The Court is free to determine from such record what the facts are and what judicial action is necessary."

13. In their brief, respondents limited their argument to the issue of the union contract and the findings of misconduct related thereto. In the brief no reference was made to the charge of alleged misconduct arising out of the lump sum commutations.

14. On September 19, 1961, The Cleveland Bar Association filed its brief in response to the objections of the respondents to the findings and recommendations of the Board of Commissioners. In this brief, the relator not only argued the question of the union contract but also included a section pertaining to the issue of the lump sum commutations. The relator's brief, at page 17, contained the following statement:

"Recommendation No. 3 of the Board of Commissioners was that

'The respondents are not guilty of misconduct relating to the alleged making of fraudulent claims or statements to the Industrial Commission of Ohio.'

"Relator's [sic] urge that this conclusion No. 3 of the Board of Commissioners is *not* warranted by the evidence in this record, and that their recommendation should have been that the respondents are *guilty of misconduct*, with respect to this second phase of relator's complaint."

15. In response to the brief of the relator, on October 31, 1961 the respondents filed a reply brief objecting to relator's attempt to place before the Ohio Supreme Court the issue of the lump sum commutations. Respondents argued, at pages 9 and 10 of their brief, that:

"Sections 1 through 20 of Rule XXVII governs the entire disciplinary procedure. *It makes no provision for any review of Board Action which is favorable to a respondent.*

\*   \*   \*   \*   \*   \*

"Here the Flecks were tried on two separate and distinct charges. As stated in Relator's Brief, on page 1, these charges were:

'1. The Union contract and its distribution.

'2. Applications for lump sum payments \* \* \*.'

They were acquitted of Charge 2. Because of the above-mentioned Rules of this Court, this acquittal is final. We submit that so much of Relator's Brief as deals with Relator's dissatisfaction with the Board's Conclusion No. 3 (Relator's Brief pp. 17–27) has no place in the record and should be ignored by the Court."

16. On December 6, 1961, the Ohio Supreme Court released its per curiam opinion in the state court disbarment proceedings of respondents. The first paragraph of the opinion stated:

"PER CURIAM. Counsel are agreed that this matter is before the court *de novo* for consideration of the

evidence and the recommendation of the Board of Commissioners on Grievances and Discipline." Cleveland Bar Association v. Fleck et al., *supra*, 172 Ohio St. p. 471, 178 N.E.2d p. 783. The Ohio Supreme Court, obviously interpreting its own rules, considered the issue of lump sum commutations and reached a conclusion different from that of the Board of Commissioners. The Court stated, at page 471, 178 N.E.2d, at page 785:

"Patently there was nothing innocent or unintended in the results of the efforts of the three respondent partners. The scheme of having each of their workman's compensation clients borrow money was a deliberate, simple and effective device enabling them to secretly grasp fees in greater amounts and in less time than provided by law."

17. The Ohio Supreme Court having determined that the respondents were guilty of misconduct with respect to the lump sum commutation question as well as the union contract question, the Court increased the discipline recommended by the Board of Commissioners and ordered that all three respondents be indefinitely suspended from the practice of law.

18. Upon receipt of the above decision, the respondents immediately filed a petition for a writ of certiorari with the Supreme Court of the United States alleging that the Supreme Court of Ohio violated its own Rule XXVII by substituting its own findings of guilt for the Board of Commissioners' findings of innocence with respect to the lump sum commutation question. The Cleveland Bar Association filed an opposing brief with the Supreme Court of the United States arguing that:

"Petitioners' request for a *de novo* hearing put them upon conclusive notice before oral argument and before their post-argument brief that the Ohio Supreme Court was, as they had urged, 'free to determine from such record what the facts are and what judicial action is necessary.'"

19. The Supreme Court of the United States denied the petition for a writ of certiorari on April 23, 1962 (369 U.S. 861, 82 S.Ct. 948, 8 L.Ed.2d 19). On June 4, 1962, respondents' application for rehearing was denied (370 U.S. 914, 82 S.Ct. 1254, 8 L.Ed.2d 406).

The respondents advance two reasons why they should not be disbarred from the practice of law in this Court. First, respondents contend, for the same reasons as argued before the United States Supreme Court in their petition for a writ of certiorari, that the consideration by the Ohio Supreme Court of the issue of lump sum applications was a denial of due process since that issue had been decided in respondents' favor by the Board of Commissioners. Second, respondents argue that subsequent to their state court disbarment the United States Supreme Court in Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964), and in United Mine Workers of America v. Illinois State Bar Assn., 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967) approved the type of contractual arrangement they had with Local 407.

In considering respondents' first contention, the Court is well aware that attorney disciplinary proceedings are "adversary proceedings of a quasi-criminal nature" where procedural due process must be afforded to the respondent. In re Ruffalo, *supra*, 390 U.S. p. 551, 88 S.Ct. 1222. The state disbarment, however, became final on June 4, 1962, when respondents' application for rehearing before the Supreme Court of the United States was denied. The decision of the Ohio Supreme Court is not here for review.

Even if this Court were to conclude that respondents were denied due process in the state proceedings, the only effect such a conclusion would have on the Court's determination of the issues is that this Court would be required to give little, if any, weight to the state

court disbarment. Selling v. Radford, *supra;* Theard v. United States, *supra.*

Accordingly, the Court has carefully considered the state court record, particularly the transcript of the hearing before the panel of the Board of Commissioners, in order to make an independent determination of whether respondents' conduct warrants disbarment from this Court. It is the Court's conclusion that it does.

The state court record clearly reveals that the respondents' plan of having each client borrow money for attorneys' fees and then applying to have the amount of the loan included in a lump sum commutation by the Industrial Commission was a deliberate scheme to obtain attorneys' fees without having to apply for such fees in a separate hearing as required by Section 4123.57(B) of the Ohio Revised Code.

The state court record also reveals that respondents can derive little comfort from *Railroad Trainmen* and *Mineworkers, supra.* In both of these cases the respective bar associations sought injunctions against the unions on the grounds that it was solicitation of litigation and the unauthorized practice of law for the union to hire or recommend specific lawyers to handle legal claims for the union members.

In *Railroad Trainmen* the Supreme Court permitted plans under which union members were advised to consult specific attorneys regarding their legal claims. In *Mineworkers* the Supreme Court ruled that the First and Fourteenth Amendments permitted union members to join together and assist one another in the assertion of their legal rights by collectively hiring an attorney to handle their legal claims.

Respondents argue that their contractual arrangement with Local 407 was nothing more than the type of arrangement specifically approved in *Mineworkers.* This Court cannot agree. Although *Railroad Trainmen* and *Mineworkers, supra,* are distinguishable on other grounds, in *Mineworkers* the Supreme Court noted that "the full amount of any settlement or award is paid directly to the injured member. The attorney receives no part of it, his entire compensation being his annual salary paid by the Union."

Such was not the case in the arrangement between respondents and Local 407. Respondents were to receive 25% of any settlement or award to an injured member of Local 407. Accordingly, it was in the best interests of respondents to promote as much litigation as they could since they received a direct financial benefit from any award. Of greater import, the record reveals that respondents actively utilized the contract arrangement with Local 407 to solicit professional employment as individual counsel for any of the 7,500 to 8,000 members of Local 407 who may have had a personal injury claim.

It is this Court's conclusion that respondents, by entering into the contract with Local 407, sought to solicit and breed litigation and that such conduct is contrary to the Canons of Professional Ethics. Respondents are guilty of misconduct which warrants disbarment from the practice of law in this Court. The Clerk is instructed to enter an order of disbarment against respondents and to strike their names from the roll of attorneys eligible to practice in this Court.

The foregoing is adopted as findings of fact and conclusions of law in conformance with Rule 52(a) of the Federal Rules of Civil Procedure.

/s/ GIRARD E. KALBFLEISCH,
Chief Judge.