MATTER OF BOGART

In Disbarment Proceedings

A-17179568

*Decided by Board June 12, 1975 and January 21, 1976*
*Decided by Attorney General January 15, 1976*

(1) The standard for suspension from practice before the Board and the Service is the same as that for disbarment before the federal courts.

(2) In light of the discretionary character of suspension from practice under 8 CFR 292.3(a), where suspension, as in the instant case, is predicated on 8 CFR 292.3(a)(7), the procedure established by 8 CFR 292.3(b), to allow respondent to show cause why he should not be suspended or disbarred, must provide the opportunity to do more than contest whether the respondent's name appears on a state suspension order. It must also include the opportunity to show that the state order was based on an invalid procedure or patently inadequate evidence, or that for some other grave reason the normal presumption established by 8 CFR 292.3(a)(7) should not govern.

(3) Since respondent in the instant case was denied the opportunity to present contentions and evidence going to alleged fundamental procedural inadequacy of his state court suspension ar d alleged insubstantiality of evidence supporting it, the suspension order of the Board is reversed and the case is remanded for further proceedings.

CHARGE:   8 CFR 292.3(a)(7)

ON BEHALF OF RESPONDENT:   Pro se

BEFORE THE BOARD
(June 12, 1975)

This case is before us pursuant to the provisions of 8 CFR 292.3(b). The respondent is an attorney who was admitted to the bar of the State of New York in 1961, and to the bar of the State of California in 1962. On March 30, 1966 the Supreme Court of the State of California entered the following order pertaining to the respondent:

Peter D. Bogart, having been convicted of violating sections 470 and 487 of the Penal Code, offenses involving moral turpitude, and an appeal having been taken, it is ordered, pursuant to section 6102 of The State Bar Act,[1] that he be suspended from the practice of law in this state until further order of this court.[2]

[1] Section 6102 of the Business and Professions Code of California, which states, in part:
(a) Upon the receipt of the certified copy of such record of conviction, if it appears therefrom that the crime of which the attorney was convicted involved or that there is probably cause to believe that it involved moral turpitude, the Supreme Court shall

552

On October 31, 1968, the Service commenced disbarment proceedings against the respondent under 8 CFR 292.3 with the issuance of a notice to show cause. Thereafter, on June 29, 1969, the Service terminated those proceedings on the ground that they were unnecessary, because the respondent was no longer within the definition of an "attorney" qualified to practice before the Service and this Board as that term is defined in 8 CFR 1.1(f).[3]

The respondent proceeded to challenge the Service's action in court. In a decision rendered August 31, 1971, the Ninth Circuit Court of Appeals held that:

> . . . We believe Bogart has a constitutional right to a hearing before the agency before being denied the right to further practice before the agency, department regulations to the contrary notwithstanding.[4]

In response to the Ninth Circuit's ruling, the respondent was served with a new notice requiring him to show cause why his suspension or disbarment from practice before the Service and the Board would not be in the public interest pursuant to 8 CFR 292.3(a)(7) (Ex. 1). This notice also informed the respondent of his right to request a hearing before a representative of the Regional Commissioner of the Service. The respondent answered denying the allegations contained in the notice to show cause and requesting a hearing.

---

suspend the attorney until the time for appeal has elapsed, if no appeal has been taken, or until the judgment of conviction has been affirmed on appeal, or has otherwise become final, and until the further order of the court. Upon good cause shown the court may set aside such suspension when it appears to be in the interests of justice so to do, due regard being had to maintaining the integrity of an confidence in the profession.

(b) If, after adequate notice and opportunity to be heard (which hearing shall not be had until the judgment of conviction has become final or, irrespective of any subsequent order under the provisions of section 1203.4 of the Penal Code, an order granting probation has been made suspending the imposition of sentence), the court finds that the crime of which the attorney was convicted, or the circumstances of its commission, involved moral turpitude it shall enter an order disbarring the attorney or suspending him from practice for a limited time, according to the gravity of the crime and the circumstances of the case; otherwise it shall dismiss the proceedings. In determining the extent of the discipline to be imposed in a proceeding pursuant to this article any prior discipline imposed upon the attorney may be considered.

(c) The court may refer the proceedings or any part thereof or issue therein, including the nature or extent of discipline, to the State Bar for hearing, report and recommendation.

[2] Bar Misc. No. 3044.

[3] 8 CFR 1.1(f) states:

The term "attorney" means any person who is a member in good standing of the bar of the highest court of any State, possession, territory, Commonwealth, or the District of Columbia, *and is not under any order of any court suspending, enjoining, restraining, disbarring, or otherwise restricting him in the practice of law.* (Emphasis supplied.)

[4] *Bogart v. Carter,* 445 F.2d 321 (C.A. 9, 1971).

A hearing commenced on February 15, 1972, before a presiding officer duly designated by the Regional Commissioner. After several adjournments to allow the respondent to attempt to retain counsel and to prepare his defense, the hearing was concluded on October 3, 1972.

At the hearing, the Service introduced the order of the California Supreme Court suspending the respondent from the practice of law in the State of California (Ex. 5). Upon conclusion of the hearing, the presiding officer entered a recommendation, dated January 24, 1973, that the respondent be suspended from practice as an attorney before the Service and the Board during such time as he shall continue to be suspended from the practice of law in the State of California. The presiding officer's recommendation was adopted by the Regional Commissioner, and the record was forwarded to us for further action pursuant to 8 CFR 292.3(b).

The portion of 8 CFR under which the Service seeks the respondent's suspension provides:

§ 292.3 Suspension or disbarment.

(a) *Grounds.* The Board, with the approval of the Attorney General, may suspend or bar from further practice an attorney or representative if it shall find that it is in the public interest to do so. The suspension or disbarment of an attorney or representative who is within one or more of the following categories shall be deemed to be in the public interest, for the purpose of this part, . . . :

\* \* \* \* \*

(7) Who has been temporarily suspended, and such suspension is still in effect, or permanently disbarred, from practice in any court, Federal, State (including the District of Columbia), territorial, or insular.

The Service based its entire case on the order suspending the respondent from the practice of law in California.

The respondent has attempted in these proceedings to collaterally attack the validity of the order of the California Supreme Court suspending him from practice, and also to collaterally attack the validity of the criminal convictions underlying the California Supreme Court's order. We agree with the presiding officer that this is not the proper forum for such an attack.

Under 8 CFR 292.3(a)(7), our inquiry is limited to a determination of whether an order of suspension or disbarment has been entered against the respondent by any of the specified courts, and whether such order is still in effect. The respondent has conceded that he is the person named in the order of the California Supreme Court, and he has not shown that the California Supreme Court lacked the authority to enter such an order or that the order is no longer in effect. While the decision of the Ninth Circuit in *Bogart* v. *Carter*, 445 F.2d 321 (C.A. 9, 1971), required the granting of a hearing to the respondent, nothing in that decision required the scope of the hearing to go beyond the proof required to discipline the respondent under the applicable regulations.

Without conceding that there is any necessity for us to consider any information other than the order of the California Supreme Court suspending the respondent from the practice of law, we note that subsequent to the hearing before the presiding officer, the Supreme Court of California entered an order permanently disbarring the respondent from the practice of law in California. *In re Bogart*, 9 Cal. 3d 743, 511 P.2d 1167, 108 Cal. Rptr. 815 (1973), appeal dismissed, *Bogart v. State Bar of California*, 415 U.S. 903 (1974).

In the course of that opinion, the California Supreme Court considered and rejected the respondent's contentions that there were procedural defects in the disciplinary proceedings conducted by the State Bar of California. The court noted that the respondent received at least four hearings from the State Bar on the issue of discipline, that the proceedings were fair, and that the respondent was afforded the assistance of counsel, full discovery, and additional time in which to fully present his claims. The court also noted that it had rejected seven attempts by the respondent to have his suspension set aside, and that the respondent had been denied relief by the United States Supreme Court on three occasions.[5] Moreover, we note that the convictions that formed the basis for the respondent's suspension by the California Supreme Court were affirmed on appeal. *People v. Bogart*, 7 Cal. App. 3d 257, 86 Cal. Rptr. 737 (1970).

The respondent claims that 8 CFR 292.3(a)(7) is unconstitutional because it denies him a due process hearing on the merits of the charges upon which the state court suspension was predicated. The short answer to this contention is that we are bound by the regulations promulgated under the Immigration and Nationality Act. *Matter of Bilbao-Bastida*, 11 I. & N. Dec. 615 (BIA 1966), aff'd *Bilbao-Bastida v. INS*, 409 F.2d 820 (1969), cert. dismissed, 396 U.S. 802 (1969); *Matter of Tzimas*, 10 I. & N. Dec. 101 (BIA 1962). This is not the proper forum for a determination of the constitutionality of the regulations. Cf. *Matter of Swissair "Flight #164,"* Interim Decision No. 2324 (BIA 1974); *Matter of Santana*, 13 I. & N. Dec. 362 (BIA 1969); *Matter of L—*, 4 I. & N. Dec. 556 (BIA 1951).

The respondent claims that he cannot be suspended or disbarred from practice before us because he is still a member in good standing of the bar of the State of New York.[6] He argues that the language of 5 U.S.C. 500(b) precludes the Service or the Board from preventing his practice in administrative immigration proceedings as long as he is a member in

---

[5] *Bogart v. State Bar of California*, 390 U.S. 37 (1968); *Bogart v. Reagan*, 386 U.S. 211 (1967); *Bogart v. Traynor*, 385 U.S. 451 (1967), reh. denied, 386 U.S. 939 (1967).

[6] It is not apparent from the record that the respondent has made any attempt to practice law in the State of New York since his suspension by the California Supreme Court.

good standing of the bar of the highest court of *any* state.[7] This contention is without merit. It is clearly stated in 5 U.S.C. 500(d)(2) that this section does not "limit the discipline, including disbarment, of individuals who appear in a representative capacity before an agency."

We have concluded that the respondent's suspension from practice before the Service and this Board would be in the public interest under 8 CFR 292.3(a)(7). Although we have referred to the respondent's apparent permanent disbarment by the Supreme Court of California, *In re Bogart, supra,* our decision to suspend is based solely on the order of suspension introduced at the hearing before the presiding officer.

**ORDER:** The respondent is suspended from practice as an attorney before the Immigration and Naturalization Service and before the Board of Immigration Appeals during such time as he is prohibited from the practice of law in the courts of the State of California.

*Further order:* The record is certified to the Attorney General for final disposition, and the foregoing order is stayed pending such disposition.

## BEFORE THE ATTORNEY GENERAL
### (January 15, 1976)

This case is before me for review pursuant to 8 CFR 292.3(b). The facts are as follows: The respondent is an attorney who was admitted to the bar of the State of New York in 1961, and to the bar of the State of California in 1962. On March 30, 1966, the Supreme Court of the State of California entered the following order pertaining to the respondent:

> Peter D. Bogart, having been convicted of violating sections 470 and 487 of the Penal Code, offenses involving moral turpitude,[1] and an appeal having been taken, it is ordered, pursuant to section 6102 of The State Bar Act,[2] that he be suspended from the practice of law in this state until further order of this court.

---

[7] 5 U.S.C. 500(b) provides:

An individual who is a member in good standing of the bar of the highest court of a State may represent a person before an agency on filing with the agency a written declaration that he is currently qualified as provided by this subsection and is authorized to represent the particular person in whose behalf he acts.

---

[1] The offenses were grand theft and forgery.

[2] Section 6102 of the Business and Professions Code of California states, in pertinent part:

(a) Upon the receipt of the certified copy of such record of conviction, if it appears therefrom that the crime of which the attorney was convicted involved or that there is probably cause to believe that it involved moral turpitude, the Supreme Court shall suspend the attorney until the time for appeal has elapsed, if no appeal has been taken, or until the judgment of conviction has been affirmed on appeal, or has otherwise become final, and until the further order of the court. Upon good cause shown the court may set aside such suspension when it appears to be in the interests of justice so to do, due regard being had to maintaining the integrity of and confidence in the profession.

(b) If, after adequate notice and opportunity to be heard (which hearing shall not be had until the judgment of conviction has become final or, irrespective of any subsequent

556

On October 31, 1968, the Immigration and Naturalization Service (the "Service") commenced disbarment proceedings against the respondent under 8 CFR 292.3 with the issuance of a notice to show cause. Thereafter, on June 29, 1969, the Service terminated those proceedings on the ground that they were unnecessary since the respondent was no longer within the definition of an "attorney" qualified to practice before the Service and the Board of Immigration Appeals (the "Board") as that term is defined in 8 CFR 1.1(f).

The respondent sought judicial review of the Service's action. In a decision rendered August 3, 1971, the Ninth Circuit Court of appeals held that Bogart had

> . . . a constitutional right to a hearing before the agency before being denied the right to further practice before the agency, department regulations to the contrary notwithstanding.

*Bogart v. Carter*, 445 F.2d 321, 322 (C.A. 9, 1971). The court expressly relied upon *In re Ruffalo*, 390 U.S. 544 (1968) and *Theard v. United States*, 354 U.S. 278 (1957).

In response to the Ninth Circuit's ruling, the respondent was served with a new notice requiring him to show cause why his suspension or disbarment from practice before the Service and the Board pursuant to 8 CFR 292.3(a)(7) would not be in the public interest. This notice also informed the respondent of his right to request a hearing before a representative of the Regional Commissioner of the Service. The respondent answered denying the allegations contained in the notice to show cause and requesting a hearing.

A hearing commenced on February 15, 1972, before a presiding officer duly designated by the Regional Commissioner. After several adjournments to allow the respondent to attempt to retain counsel and to prepare his defense, the hearing was concluded on October 3, 1972. At the hearing, the only evidence introduced by the Service was the order of the California Supreme Court suspending the respondent from the practice of law in the State of California. Upon conclusion of the hearing, the presiding officer entered a recommendation, dated January 24, 1973, that the respondent be suspended from practice as an attorney

---

order under the provisions of section 1203.4 of the Penal Code, an order granting probation has been made suspending the imposition of sentence), the court finds that the crime of which the attorney was convicted, or the circumstances of its commission, involved moral turpitude it shall enter an order disbarring the attorney or suspending him from practice for a limited time, according to the gravity of the crime and the circumstances of the case; otherwise it shall dismiss the proceedings. In determining the extent of the discipline to be imposed in a proceeding pursuant to this article any prior discipline imposed upon the attorney may be considered.

(c) The court may refer the proceedings or any part thereof or issue therein, including the nature or extent of discipline, to the State Bar for hearing, report and recommendation.

before the Service and the Board during such time as he continued to be suspended from the practice of law in the State of California. The presiding officer's recommendation was adopted by the Regional Commissioner and the Board of Immigration Appeals.

The portion of 8 CFR under which the Service seeks the respondent's suspension provides:

§ 292.3 Suspension or disbarment.

(a) *Grounds.* The Board, with the approval of the Attorney General, may suspend or bar from further practice an attorney or representative if it shall find that it is in the public interest to do so. The suspension or disbarment of an attorney or representative who is within one or more of the following categories shall be deemed to be in the public interest, for the purpose of this part, . . .:

\* \* · \* \* \*

(7) Who has been temporarily suspended, and such suspension is still in effect, or permanently disbarred, from practice in any court, Federal, State (including the District of Columbia), territorial, or insular.

The Service based its entire case on the simple existence of an outstanding order suspending the respondent from the practice of law in California, and the decision of the Board of Immigration Appeals was expressly based solely upon the existence of that order.

In the course of his hearing before the special inquiry officer, respondent attempted on numerous occasions to introduce evidence for the purpose of diminishing the credit and persuasive value of the suspension order of the California Supreme Court. Challenges were directed to both the adequacy of the procedure afforded by the Court, see, *e.g.,* Tr. at 22–23, and the sufficiency of the evidence supporting its decision. Much of the evidence proffered with regard to the latter issue took the form of substantive and procedural attacks upon the criminal conviction which underlay the suspension order. The special inquiry officer refused to accept or consider any of this evidence, stating that he considered the order of the California Supreme Court to be conclusive and that he would go behind it neither for the purpose of determining whether respondent had in fact been convicted of the cited criminal offense nor for the purpose of ascertaining whether the order was the product of a procedurally adequate process. Tr. at 32. See also Tr. at 36–37. With respect to the underlying conviction, the special inquiry officer stated:

. . . I will not consider the validity of the conviction which was the basis of the order of the Supreme Court, so that any proof that you want to offer in connection with the validity or the legality of that conviction I will not accept regardless of what other offers you have in that line, Mr. Bogart, so it's not necessary for you to repeat each of the offers. Nothing will be accepted in this proceeding with respect to the legality of the conviction which is the basis for the order.

Tr. at 46. See also Tr. at 47. He went on to state:

I am interested only in the judgment of the superior (*sic*) court which suspended you

558

from practice, and that suspension could be for any reason, I am not concerned why you were suspended.

Tr. at 49. See also Tr. at 52. In short, the special hearing officer considered himself "conclusively bound by [the] order of the Supreme Court." Tr. at 60.

*In re Ruffalo, supra,* and *Theard v. United States, supra,* upon which the Ninth Circuit relied in ordering that respondent be granted the right to a hearing, dealt with disbarments from federal courts on the basis of state court disbarment or suspension orders. Both cases make clear that federal courts are not conclusively bound by state court disbarments, although state disbarment action is entitled to respect. While, except within narrow limits, see *Konigsberg v. California,* 353 U.S. 252 (1957); *Schware v. Board of Bar Examiners,* 353 U.S. 232 (1957), federal courts have no authority to reexamine or reverse the action of a state supreme court in disbarring a member of its bar, there is an independent obligation upon the federal courts to determine for themselves whether withdrawal of the privilege of practicing before them is warranted. *In re Fleck,* 419 F.2d 1040, 1042 (C.A. 6, 1969); *In re Abrams,* 385 F. Supp. 1210 (D. N.J., 1974, *rev'd on other grounds,* No. 75-1029 (C.A. 3, June 30, 1975).

In *Selling v. Radford,* 243 U.S. 46, 50-51 (1917), the seminal case concerning the effect of state disbarment on corresponding federal action, and the case underlying both *Ruffalo* and Theard, the Supreme Court set out the standard by which its judgment would be guided:

> In other words, in passing upon the question of the right to continue to be a member of the bar of this court, we think we should recognize the absence of fair private and professional character inherently arising as the result of the action of the Supreme Court of Michigan so far as we are at liberty to do so consistently with the duty resting upon us to determine for ourselves the right to continue to be a member of this bar. That is to say, we are of the opinion that we should recognize the condition created by the judgment of the state court unless, from an intrinsic consideration of the state record, one or all of the following conditions should appear: 1. that the state procedure from want of notice or opportunity to be heard was wanting in due process; 2. that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not consistently with our duty accept as final the conclusion on that subject; or 3. that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do.

It is my view that the Ninth Circuit in its brief opinion in *In re Bogart, supra,* 445 F.2d at 322, implicitly asserted an inalienable obligation on the part of the Service to exercise an independent judgment in suspension proceedings similar to that required of federal courts. Thus the hearing required by that decision was not a hearing simply to determine

whether respondent has been suspended, but a hearing in which respondent might seek to discredit the state finding for lack of minimum procedural fairness in the underlying process, see *In re Ruffalo, supra,* or for absence of minimally sufficient evidentiary support, see *Selling* v. *Radford, supra; In re Wilkes,* 494 F.2d 472 (C.A. 5, 1974); and in which respondent might adduce some other "grave reason" which would prevent the natural consequences of the state judgment from extending into the federal sphere, see *Theard* v. *United States, supra.* See generally *In re Troy,* 505 F.2d 746 (C.A. 1, 1975); *In re Fleck, supra.*

The Board argues it is bound by 8 CFR 292.3(a)(7) which states that the Board may suspend an attorney if such suspension is in the public interest and that, if an attorney has been suspended by a state court, his suspension from the bar of the Board "shall be deemed to be in the public interest." Obviously, however, Departmental regulations cannot contravene judicially established requirements of fairness, cf. *In re Ming,* 469 F.2d 1352, 1355 (C.A. 7, 1972), and should not be interpreted to do so where such interpretation is readily avoidable. While subsection 292.3(a)(7) does indicate that state suspension "shall be deemed" grounds for Board suspension, suspension is nonetheless discretionary, since the prologue of subsection 292.3(a) provides only that the Board "may suspend" if the enumerated grounds exist. Moreover, subsection 292.3(b) provides:

> If and (*sic*) investigation establishes to the satisfaction of the regional commissioner that suspension or disbarment proceedings should be instituted, he shall cause a copy of the written charges to be served upon the attorney or representative, either personally or by registered mail, with notice to show cause within a specified time, not less than 30 days, why he should not be suspended or disbarred.

Particularly in light of the discretionary character of subsection 292.3(a), the procedure established by subsection 292.3(b) must, in the present context, provide the opportunity to do more than contest whether the respondent's name appears upon a state suspension order. It must include also the opportunity to show that the state order was based upon an invalid procedure or patently inadequate evidence, or that for some other grave reason the normal presumption established by subsection 292.3(a)(7) should not govern. Only in this manner can the independent integrity of the federal administrative bar be maintained. In sum, since 8 CFR 292.3(b) is meant to provide the opportunity to establish the basis for informed exercise of the Board's discretion under 8 CFR 292.3(a), including the existence of extraordinary factors, of the sort described above, overcoming the presumptive effect of state bar suspension; and since respondent, in this case, was denied the opportunity to present contentions and evidence going to alleged fundamental procedural inadequacy of his state court suspension and alleged insub-

stantiality of the evidence supporting it; the suspension by the Board must be reversed.

The above does not mean that, should a new order to show cause be issued, the Service must relitigate every issue raised by respondent in both his criminal trial and his state suspension proceeding. If it concludes that minimum procedural due process was afforded in the hearing of claims in these proceedings and that the evidence against respondent was minimally sufficient, reliance on the state decision-making process is not improper. *In re Chipley*, 448 F.2d 1234 (C.A. 4, 1971). See *In re Isserman*, 345 U.S. 286 (1953) (Op. of Vinson, C.J.). Cf. *Thistlethwaite v. City of New York*, 497 F.2d 339 (C.A. 2, 1974); *In re Ming, supra*, 469 F.2d at 1356. Indeed, the propriety of reliance is enhanced in the present context by the fact that the Board of Immigration Appeals is not a court of general jurisdiction, but the intended repository of a relatively narrow expertise. Relitigation before the Board of matters of state or even constitutional law previously litigated before a state supreme court thus seems particularly inappropriate. The state decision-making process, then, both in its weighing of evidence in the record and in its analysis of legal questions raised, may, if conducted in accordance with procedural due process and not patently erroneous in its result, be accepted and adopted by the Board in the course of a suspension proceeding. Furthermore, if the opportunity to be heard on certain claims existed in the state system and was ignored, the Board may refuse to consider such claims.

The litigation surrounding the question of Mr. Bogart's qualification to practice before the Board and the Service (and other courts) has been protracted and difficult. The standard for suspension from practice before the Board and the Service, however, is the same as that for disbarment before the federal courts:

> Disbarment being the very serious business that it is, ample opportunity must be afforded to show cause why an accused practitioner should not be disbarred. If the accusation rests on disbarment by a state court, such determination of course brings title deeds of high respect. But it is not conclusively binding on the federal courts. The recognition that must be accorded such a state judgment and the extent of the responsibility that remains in the federal judiciary were authoritatively expounded in *Selling v. Radford*.

*Theard v. United States, supra*, 354 U.S. at 282. That responsibility has not been discharged. The decision of the Board of Immigration Appeals is reversed and the cause remanded to the Board for further proceedings consistent with this opinion.

### BEFORE THE BOARD

(January 21, 1976)

In our decision dated June 12, 1975, we ordered the suspension of the respondent as an attorney before the Service and this Board during such

time as he is prohibited from the practice of law in the courts of the State of California. We further ordered that the record be certified to the Attorney General for final disposition, and stayed the suspension order pending such disposition.

On January 15, 1976, the Attorney General reversed our order of suspension and remanded this case to us for further proceedings. Accordingly, we shall remand the record to the Regional Commissioner for further proceedings consistent with the Attorney General's opinion of January 15, 1976.

**ORDER:** The record is remanded for further proceedings in accordance with the above opinion.