## Icardi Appeal.

Argued October 6, 1969. Before JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Samuel L. Rodgers,* with him *Rodgers and Roney,* for appellant.

*Roy Wilkinson,* with him *G. F. Baer Appel,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 9, 1970:

Appellant, Aldo L. Icardi, appealed to this court from a decision of the State Board of Law Examiners denying his application for admission to the Bar of this court. Because of the extremely unusual nature of this appeal, we granted appellant's request for oral argument.

The history of Icardi's efforts to be admitted to the practice of law and his personal history, as it reflects on those efforts, must be set out in order that the instant appeal be brought into proper focus.

After his graduation from the University of Pittsburgh, early in 1943, Icardi entered the United States Army. He served for six months in the Coast Artillery and then was transferred to the Office of Strategic

Services. He was honorably separated from active service in January of 1946, having been decorated by both the Italian and American governments.

Following his separation from active service, he enrolled in the Law School of the University of Pittsburgh and was approved, on December 13, 1946, for registration as a law student by the Allegheny County Board of Law Examiners. On August 27, 1948, the Allegheny County Board again approved him, this time in connection with his application to be admitted to the Bar Examination. He successfully completed the Bar Examination given in March of 1949 and was, at that point, fully qualified for admission to practice except for the service of the clerkship required by our rules.

Without having served the requisite clerkship, Icardi accepted employment in Lima, Peru, where he also continued his legal education at the Pontifica Universidad Catolica del Peru, where he earned the degree of "abogado". He passed the Peru bar examination and was admitted to practice there in April of 1951. Shortly thereafter he returned to the United States and applied to the Allegheny County Board for a waiver of the clerkship requirement, the waiver request being based on his graduate studies and employment in a legal capacity in Peru. On June 26, 1951, the Allegheny County Board approved the request but the State Board denied it.

Shortly thereafter, wide publicity was given to a war-time incident in which Icardi was allegedly involved. A national magazine published an article which alleged that Icardi and certain confederates, while on a secret mission behind the German lines in Italy, had murdered one Major Holohan, the commander of the mission, and appropriated government funds to their own use. As a result of the publicity which followed the publication of the article, the Allegheny County Board withdrew the approval which it had granted on August 27, 1948.

The Allegheny County Board then commenced an investigation and held hearings on the matter and, on May 26, 1954, filed an amended report declining to approve Icardi for admission to the Bar. Icardi filed a petition to the State Board for admission or a hearing and the State Board granted a hearing which was held on January 5, 1955. On June 26, 1955, the State Board confirmed the adverse report of the Allegheny County Board and rejected Icardi's application. Icardi eventually appealed that decision to this court, which, on September 10, 1957, without opinion, denied the appeal.

There the matter rested until September 23, 1960, on which date Icardi filed a petition with this court for leave to reapply to the State Board for admission. We referred the petition to the State Board for consideration and report and the Board recommended its denial. We then, on December 2, 1960, again without opinion but with one Justice dissenting, denied the petition.

The issue then again became dormant until, in November of 1967, Icardi filed a new application for admission. The State Board again denied the application and Icardi appealed to this court and requested leave for oral argument. We granted the request for oral argument and heard the matter at our Fall session in Pittsburgh.

The record in this case is voluminous and reflects the investigations undertaken by both the State and County Boards. The County Board contacted and interviewed an alleged cofelon, a Federal District Judge who refused to allow the extradition of that cofelon to Italy, reporters, State and Defense Department officials, the chairman of a Congressional Committee investigating the case and many others. The record compiled by the County Board discloses that although Icardi has never been convicted of any crime by any

American court, civil or military, he was tried, in absentia, by an Italian court and convicted of murder. The record also reveals that Icardi, despite the sensational charges against him and an intensive investigation conducted by military authorities, was granted an honorable discharge from the United States Army in December of 1952.

There can be no doubt that Icardi, through many reputable and highly respected citizens, made out a *prima facie* case of good moral character. The evidence is such that were it not for the accusations against him in the Holohan case, Icardi would most certainly have been admitted routinely. There is nothing else in this record which could stand in his way, and, despite his protestation that no explanation or reason was given by either Board for finding that he did not possess the moral fitness for admission, it is clear to us, as it must be to him, that the charges arising out of the O.S.S. mission form the basis for the actions of the Boards.

Before we reach the question of whether the information gathered by the Boards in their investigations precludes Icardi's admission to practice, we must determine whether the procedures followed comport with due process. The landmark decision in this field is *Willner v. Committee on Character*, 373 U.S. 96 (1963). In that case, Willner was, for the eighth time, seeking admission to the bar of the State of New York after having passed that State's bar examination. His denial of admission was reversed by the United States Supreme Court on the basis that he had been denied procedural due process. The Supreme Court concluded that the Committee had relied on various complaints against Willner without affording him an opportunity to confront and cross-examine his accusers. The Court there said, 373 U.S. 103, 104: "We have emphasized in recent years that procedural due process often requires confrontation and cross-examination of those whose

word deprives a person of his livelihood. . . . We think the need for confrontation is a necessary conclusion from the requirements of procedural due process in a situation such as this. . . ." We conclude that *Willner* is controlling.

An examination of the records of the hearings held by both Boards and of the Report of the Subcommittee of the County Board makes it perfectly clear that those bodies relied, as did the Committee in *Willner*, on *ex parte* statements and documents gathered in their investigations. It is true that Icardi had ample opportunity to offer evidence, which he did, to rebut the general import of the accusations contained in those *ex parte* statements and documents. He was never, however, given the opportunity of confronting and cross-examining the authors or makers of the various documents and statements which the Boards concluded overcame the *prima facie* evidence of good moral character presented by him. That failure deprived Icardi of the procedural due process to which he was entitled and requires a reversal in order that his application may be considered in the light of the standards mandated by *Willner*.[1]

The appeal is sustained and the matter is remanded to the State Board of Law Examiners with instructions to direct the appropriate County Board of Law Examiners to conduct a hearing, on reasonable notice to the petitioner containing a plain and concise statement of the particular charges against him on account of which his character and fitness to practice have been disapproved, with opportunity to him to be confronted by

---

[1] We do not hold that our previous rejections of Icardi's appeals constitute *res adjudicata*, thereby precluding further litigation. We do not do so because his previous appeals ante-dated *Willner* and we will not deprive him of a constitutional right not generally believed to exist prior to that decision, particularly in a nonadversary proceeding such as this.

and to cross-examine the witnesses against him and that in default thereof, he be granted a certificate to permit his admission to the Bar.

Mr. Justice JONES and Mr. Justice COHEN dissent.

Mr. Chief Justice BELL and Mr. Justice POMEROY took no part in the consideration or decision of this case.