469 F.2d 1352
 In the Matter of William R. MING, Jr., an Attorney, Appellant.
 No. 71-1754.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 3, 1972.
Decided Aug. 2, 1972.
 
 Ellis E. Reid, Chicago, Ill., for appellant.
 James R. Thompson, U. S. Atty., John P. Lulinski, Thomas James, Asst. U. S. Atty., Chicago, Ill., for appellee.
 Before SWYGERT, Chief Judge, and KILEY and PELL, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 This is an appeal from an order of the Executive Committee of the United States District Court for the Northern District of Illinois, Eastern Division, suspending appellant from practicing law before that court pending further order of the Executive Committee.
 
 
 2
 On April 14, 1970, a criminal information was filed against Ming charging him with four counts of willfully and knowingly failing to make timely federal income tax returns for the years 1963 through 1966, inclusive, in violation of Title 26 U.S.C. Sec. 7203. Appellant was found guilty by a jury on each of the four counts. Following that conviction, and while the case was on appeal to this court, on December 4, 1970, the United States Attorney filed a petition before the Executive Committee of the district court seeking to have appellant suspended or disbarred from the practice of law in that court based on General Rule 8 of that court. Rule 8 provided in pertinent parts as follows:
 
 
 3
 "Rule 8. Discipline of Attorneys; Reinstatement.
 
 
 4
 The Executive Committee may order the disbarment or suspension of any attorney who (1) has been convicted of a felony in any federal, state or territorial court, or (2) has been disbarred or suspended by any such court. After notice and opportunity to respond, the judges of the Executive Committee may order the disbarment or suspension of any attorney who (1) has resigned from the bar of another court, or (2) has been convicted of a misdemeanor, or (3) is found to have committed acts of professional misconduct prejudicial to the orderly administration of justice such as fraud, deceit, malpractice or failure to abide by the provisions of the Canons of Ethics of the American Bar Association. . . . (c) After an answer has been filed, but before the entry of an order of disbarment or suspension, the Executive Committee may set the matter for a hearing before it. . . ." (Emphasis added.)
 
 
 5
 The basis of the petition was that appellant had been convicted of a misdemeanor.
 
 
 6
 On December 24, 1970, Ming filed a brief answer stating that he was not guilty of the offenses charged; that the criminal case was presently on appeal; that neither in this matter nor in any other had his conduct been such as to warrant or require any disciplinary action; and that he had not committed any acts of professional misconduct prejudicial to the orderly administration of justice nor failed to abide by the provisions of the Canons of Ethics of the American Bar Association. Some ten months later, without a hearing and with only the petition and the answer before it, the Executive Committee in an order signed by all of the Committee except Judge Parsons suspended Ming from practice. It was from that order that the present appeal arises.
 
 
 7
 Shortly before argument of this case, Ming filed a motion seeking to stay the order of the Executive Committee. That motion was considered with the merits at oral argument. Following the argument, this panel issued an order staying, until further order, appellant's suspension from practicing before the district court. See In re Sawyer, 256 F.2d 553 (9th Cir. 1956).
 
 
 8
 Following argument on the present appeal, another panel of this court affirmed Ming's conviction in the tax case which had been the basis for the United States Attorney's petition, United States v. Ming, 466 F.2d 1000 (7th Cir. 1972). Rehearing was denied on June 26, 1972.
 
 
 9
 Without reaching the merits of the suspension, we reverse for two reasons: first, the suspension for "conviction" of a misdemeanor took place before the conviction had reached finality; second, the lack of a hearing before the Executive Committee constituted a denial of due process of law.
 
 
 10
 Judge Steckler, speaking for this court in In re Echeles, 430 F.2d 347, 349-350 (7th Cir. 1970), spelled out the singular nature of these proceedings:
 
 
 11
 "Preliminarily, it would be well to note that disbarment and suspension proceedings are neither civil nor criminal in nature but are special proceedings, sui generis, and result from the inherent power of courts over their officers. Such proceedings are not lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent. They are not for the purpose of punishment, but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice. Ex parte Wall, 107 U.S. 265, 2 S. Ct. 569, 27 L. Ed. 552 (1882). Thus the real question at issue in a disbarment proceeding is the public interest and an attorney's right to continue to practice a profession imbued with public trust. In re Fisher, 179 F.2d 361 (7th Cir. 1950), cert. denied sub nom. Kerner, et al. v. Fisher, 340 U.S. 825, 71 S.Ct. 59, 95 L.Ed. 606 (1950)."
 
 
 12
 Irrespective of whether Ming's conduct on which he was convicted would suffice as a basis for suspension, his professional interregnum was for the conviction not the constituent conduct thereof. Although we have not been shown any case directly on point, interpretation of the word "convicted" was before this court in an analogous case involving a conviction for possession of marihuana and whether it would serve as a statutory basis for deportation under 8 U.S.C. Sec. 1251(a) (11). We there stated, ". . . the Section contemplates a conviction which has attained a substantial degree of finality. . . . We therefore hold that as long as a direct appeal is pending, it is sufficient to negate finality of conviction. . . ." Will v. Immigration and Naturalization Service, 447 F.2d 529, 531 & 533 (7th Cir. 1971).
 
 
 13
 We are not unmindful of policy factors which underlie the case of a lawyer convicted of a crime. The public may generally and justifiably entertain doubt as to whether an attorney, supposedly devoted to upholding the law, should himself participate as a practitioner in the profession while in the position of having been recently found guilty of conduct in derogation of the law. In Will, the convicted defendant was an alien. It has been said that "lawyers also enjoy first-class citizenship," Spevack v. Klein, 385 U.S. 511, 516, 87 S.Ct. 625, 629, 17 L.Ed.2d 574 (1967). In looking at the panoply of individual rights, we do not find a basis for awarding a citizen lawyer a lesser position than the alien.
 
 
 14
 We do not, however, tie the hands of the district court so that it can never suspend a person until his conviction reaches finality. All we say is that if the conviction itself is to be used to show that the appellant actually committed the underlying acts which are of such a nature as to form the basis for disbarment or suspension that that conviction must have reached finality, at least to the extent of exhaustion of direct appeals. Since appellant has the possibility of filing for a writ of certiorari in the United States Supreme Court, we do not think that the affirmance of his criminal conviction by this court moots this point.[1]
 
 
 15
 If the Executive Committee is of the opinion that the nature of the conduct requires consideration of suspension before finality, it can always proceed under the portion of General Rule 8 allowing disbarment or suspension for "acts of professional misconduct prejudicial to the orderly administration of justice," the section following the misdemeanor section. Proceeding under that section would clearly require an evidentiary hearing to establish that the attorney had in fact committed the acts of which he was charged, rather than relying on the judgment of the criminal court, but such a path is necessary in these situations.
 
 
 16
 In In re Echeles, supra, there had been a reversal of a prior suspension based in part on a felony conviction which had been reversed. See In re Echeles, 374 F.2d 780 (7th Cir. 1967). The Executive Committee on remand had stated that it could not therefore suspend Echeles for the action underlying the reversed conviction. This court stated in reversing that holding:
 
 
 17
 "While perhaps in a disbarment proceeding when the conviction of a felony is relied on as the sole ground for disbarment, there may be plausibility for the view that an acquittal or reversal should be conclusive and preclude disbarment merely on that ground, yet as a general rule the mere acquittal of a crime will not be a bar to a suspension of the attorney's right to practice or his disbarment for unprofessional conduct, based upon the same acts or conduct involved. A conviction may be prevented by technicalities or other matters not determinative of the merits of the case." 430 F.2d at 352. (Emphasis added.)
 
 
 18
 We recognize that the finality doctrine may result in delay of the use of a conviction for suspension or disbarment. Without typifying it as a complete answer, we do note in the appeal of the criminal conviction that the appellant filed his brief on May 13, 1971. On motion of the Government, its time for filing its brief was extended until July 14, 1971. A second motion was granted extending the time to August 14, 1971. No further motion was filed for extension until October 28, 1971, more than two months after the brief was due. This motion was denied. Subsequently time was extended to December 17, 1971. The Government was permitted to file its brief instanter by order entered January 13, 1972.
 
 
 19
 As to the second ground for reversal, the failure to give appellant a hearing, we note that the district courts are free to adopt their own local rules defining grounds for disbarment and suspension and the procedures to be followed. But these rules must meet the essential requirements of due process. As the Supreme Court recently said in In re Ruffalo, 390 U.S. 544, 550, 88 S. Ct. 1222, 1226, 20 L.Ed.2d 117 (1968), "Disbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer. Ex parte Garland, 4 Wall. 333, 380 [, 18 L.Ed. 366]; Spevack v. Klein, 385 U.S. 511, 515 [, 87 S. Ct. 625, 628, 17 L.Ed.2d 574]. He is accordingly entitled to procedural due process. . . ." Later in Ruffalo, the Court had to decide whether to accept a state court's disbarment order as dispositive. It held that "one of the conditions this Court considers in determining whether disbarment by a State should be followed by disbarment here [in the federal courts] is whether 'the state procedure from want of notice or opportunity to be heard was wanting in due process.' Selling v. Radford, 243 U.S. 46, 51 [, 37 S.Ct. 377, 379, 61 L.Ed. 585]." 390 U.S. at 550, 88 S.Ct. at 1226. (Emphasis added.) Earlier the Court in Randall v. Brigham, 74 U.S. (7 Wall) 523, 540, 19 L.Ed. 285 (1868), had stated,
 
 
 20
 "All that is requisite to their [disbarment proceedings] validity is that, when not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence." (Emphasis added.)
 
 
 21
 General Rule 8 provides for "notice and opportunity to respond" for three grounds for disbarment, including conviction of a misdemeanor. In the present case, this was interpreted to be satisfied by allowing appellant to file a written answer. In previously construing the phrase "notice and opportunity to respond" in the context of a disbarment for professional misconduct, this court stated, "The Court specifically took note of the difference in procedure authorized by Rule 8 between a summary disbarment or suspension for conviction of a felony, and a disbarment or suspension after notice and hearing for professional misconduct." In re Echeles, supra, 430 F.2d at 352.[2] (Emphasis in original.)
 
 
 22
 However, we need not rest on the language from the Supreme Court nor on our former construction of this phrase, since logic compels us to reach the same result. Both licenses to practice law and welfare payments can be viewed as a type of "new property," Reich, The New Property, 73 Yale L.J. 733 (1964), the deprivation of which has drastic consequences to the individual. It is only fair and just that the Government not subject any person to such a drastic divestment without affording him substantial due process of law. As the Supreme Court noted in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970), required procedural safeguards depend on the particular characteristics of the participants and the controversy, but "'[t]he fundamental requisite of due process of law is the opportunity to be heard.' Grannis v. Ordean, 234 U.S. 385, 394 [34 S.Ct. 779, 783, 58 L.Ed. 1363] (1914)." 397 U.S. at 267, 90 S.Ct. at 1020.
 
 
 23
 "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." Goldberg v. Kelly, supra, 397 U.S. at 269, 90 S.Ct. at 1021. See also, In re Crane, 23 Ill.2d 398, 400-401, 178 N.E.2d 349 (1961).
 
 
 24
 As on an initial matter, we would not conceive that every Tom, Dick and Harry of a misdemeanor would serve as a basis for suspension. Secondarily, but conceivably of genuine significance, there is the matter of the duration of the suspension. Extenuating circumstances tending toward a minimization of the penalty very probably would require a hearing for proper development. Recently, in a case of parole revocation, the Supreme Court held that the parolee had the right to a hearing, with minimum due process requirements, including the opportunity to be heard in person and to present evidence and to confront and cross-examine adverse witnesses, Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). While in a hearing on a suspension based on a finalized conviction of a misdemeanor, an attorney may not be allowed to reargue the merits of the conviction, he would seem to have similar interests to those of the parolee, or a person being sentenced for a crime, to some hearing under due process. In such a situation, "a chance to respond" must be equated to "the opportunity to be heard" which necessarily implies a hearing. Appellant was not afforded such a hearing and we find that this denial was a deprivation of due process of law.
 
 
 25
 For these reasons, the order of suspension entered in the district court is vacated.
 
 
 26
 Reversed.
 
 
 
 [1]
 On July 13, 1972, this court entered an order staying the issuance of its mandate for 30 days in order for the appellant to file a petition for a writ of certiorari
 
 
 [2]
 We do not here consider whether such summary disbarment or suspension for conviction of a felony violates due process