[No. C.D. 5706.   En Banc.   April 1, 1976.]

*In the Matter of the Disciplinary Proceeding Against*
ROBERT G. KERR, *an Attorney at Law.*

*Douglas C. Baldwin*, for Bar Association.

*Edmund E. Lozier*, for respondent.

ROSELLINI, J.—Robert G. Kerr was admitted to the practice of law in the state of Washington on February 23, 1965, and until July 18, 1974, resided in Tacoma and continuously practiced law as an active member of the Washington State Bar Association in Pierce County, Washington.

On April 12, 1971, the respondent received a censure based upon three items of misconduct, admitted by him, growing out of his representation of one J. E. Miller in a child custody proceeding in Pierce County Superior Court. Those items are described in *In re Kerr*, 84 Wn.2d 109, 524 P.2d 406 (1974), a subsequent disciplinary proceeding based upon four items of complaint, which resulted in three reprimands and a 6-month suspension. The complaint upon which the suspension was founded involved the misuse of money which had been entrusted to the respondent to be delivered to a person not his client, of whom he took unfair advantage.

On October 24, 1974, the Washington State Bar Association filed another formal complaint against the respondent.

No answer was filed and although the respondent was properly notified he did not appear at the hearing on January 8, 1975.[1] However, he was represented by counsel who announced himself ill-prepared and asked for a continuance. This request was denied, but the attorney was told that he would be granted an opportunity to present additional evidence at a later date if he so desired.

Following the Bar Association's presentation of its witnesses, the hearing was adjourned and was reconvened on January 23, 1975. It was concluded on that day. On February 7, 1975, the respondent, through his attorney, filed a motion for continuance to allow presentation of additional evidence but did not identify or describe the evidence which he proposed to offer. The motion was denied.

On July 7, 1975, the hearing panel filed its findings of facts and conclusions and recommended that because of his prior record and continued course of misconduct, the respondent should be disbarred. The disciplinary board modified the findings but concurred in the recommendation.

The modified findings and conclusions were as follows:

---

[1] Under DRA 3.2(f) no default can be entered against an attorney. But if he fails to answer the complaint within the time allowed by the rules, the panel is directed to proceed as though he were present and had answered by a general denial.

FINDINGS
COUNT ONE OF COMPLAINT
III.

In July 1972, Robert G. Kerr was retained to represent Mr. Montague and Mr. Peterson on a charge of armed robbery of the Robert Satiacum residence in Tacoma, Washington.

IV.

On July 25, 1972, Robert G. Kerr requested and arranged a meeting for himself and Walter Metcalf with Jack Tanner, the attorney for Robert and Suzanne Satiacum, in Jack Tanner's law office in Tacoma, Washington. Metcalf, in the presence of Robert G. Kerr, asked Tanner if he could persuade Suzanne Satiacum to testify differently or sign an affidavit which would change the facts and statement she had previously given the law enforcement officials with respect to the armed robbery which she had interrupted at the Satiacum residence and which he knew to be false. Tanner refused to entertain any suggestion that he approach Suzanne Satiacum and discuss her testimony or her statements.

CONCLUSIONS
COUNT ONE OF COMPLAINT
V.

Robert G. Kerr, by his conduct in arranging a meeting for himself and Walter Metcalf with Jack Tanner, the attorney for Robert and Suzanne Satiacum, attempted to suborn perjury.

VI.

The conduct of the respondent attorney, Robert G. Kerr, as set forth above, violates the following provisions of the Code of Professional Responsibility:

DR 1-102 (MISCONDUCT),

(A) A lawyer shall not:

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

FINDINGS AND CONCLUSIONS
COUNT TWO OF COMPLAINT
VII.

The above and foregoing conduct on the part of Robert G. Kerr in conjunction with Mr. Kerr's prior discipline constitutes conduct demonstrating unfitness to practice law.

These findings and conclusions, with the disciplinary board's recommendation, were served upon the respondent's attorney. The respondent filed no brief in this court; however, his attorney appeared at the time of oral argument, the court waived the requirement of DRA 6.5(c) and permitted him to address the court. He advised the court that he had been unable to contact his client and had not been authorized to prepare a brief. In fact, he was not certain that he had the authority to speak on the respondent's behalf.

█ Although it is a part of the same transaction, it appears that the misconduct found by the disciplinary board is not the same misconduct charged in the complaint. However, no objection has been properly raised on that or any other ground. DRA 6.2 gives the respondent's attorney the right to file objections to the findings, conclusions, and recommendations of the disciplinary board but provides that such objections shall be in the form of a brief containing arguments and citations of authority in support thereof.

DRA 3.1(a)(5) provides a procedure for the amendment of a complaint. If that procedure was not followed in this instance, the respondent has waived the defect by failing to file a brief in this court presenting his contentions and arguments.

█ While we are not obliged to review the findings and recommendations, no objection having been made thereto, we are not powerless to do so. The ultimate responsibility for the discipline of attorneys rests with us, and we would be remiss in our duty were we to accept the recommendations based upon findings which are insufficient on their face.

Under our prior rules, the Board of Governors made findings of fact from the record of the trial committee. When that rule was in effect, we said in *In re Simmons*, 59 Wn.2d 689, 369 P.2d 947 (1962), that while weight was to be given to the findings of the Board of Governors when a cause was before this court and the factual determinations were questioned by the respondent, we were in as good a position as the Board of Governors to determine the facts because we reviewed the same record. The same procedure is followed under the present rules, except that the hearing panel has replaced the trial committee, and the disciplinary board has taken the place of the Board of Governors. This court's position in reviewing the findings of the disciplinary board remains the same.

We are not here concerned with the sufficiency of the evidence to support the disciplinary board's findings but rather assume, in the absence of a challenge, that the evidence was sufficient for that purpose. We do, however, feel obliged to examine the findings to see if they support the conclusions which were drawn from them.

We find on their face a material omission in the findings. They show that the respondent made an appointment with another attorney and took with him a man who, in his presence, attempted to induce the attorney to persuade his client to give testimony which he knew to be false. But they do not state that the respondent knew that the suggested testimony was false. Such knowledge on his part is left to be inferred from the relationship between the respondent and Metcalf, and the respondent's actions in arranging and attending the meeting.

While such an inference is not entirely unreasonable, we have deemed it our obligation to review the record and to ascertain whether there is more substantial evidence of guilty knowledge on the respondent's part. In the record, which incorporates by reference, excerpts from transcripts of a subsequent proceeding in which Metcalf was found guilty of attempting to bribe a witness, the following chain of events is revealed:

On July 4, 1972, the home of Robert Satiacum in Fife, Washington was burglarized. In the course of the burglary, the perpetrators, Robert Jewell Montague and Howard R. Peterson, did extensive damage to the home, ripping out walls and ceilings and breaking up furniture. They were supposedly looking for the current proceeds of the Satiacums' untaxed cigarette and unregulated fireworks sales, which were said to amount to $10,000 or more. While the burglary was in progress, Metcalf (a person notoriously associated with criminals in the area) was seen slowly driving his automobile along a road near the Satiacum home.

Suzanne Satiacum, returning home, surprised the burglars. She took a gun from her car and accosted them. After an exchange of shots, the burglars fled. They were apprehended in the vicinity shortly afterwards, having at that time on their persons the sum of $14,000. (*See State v. Montague*, 10 Wn. App. 911, 521 P.2d 64 (1974).)

Metcalf, a client who sometimes brought other clients to the respondent, approached him and asked him to represent the burglars. Payment for services to these clients was made either by Metcalf alone or by Metcalf and Montague. About 3 weeks later the meeting with attorney Tanner was arranged. It was suggested that he should persuade Mrs. Satiacum to say that her husband had given Metcalf permission to come to his house, or to send representatives (the burglars) to get money which Satiacum owed Metcalf as a result of a business deal having fallen through, and that she had previously been unaware of this agreement. This Tanner refused to do.

Other approaches were made directly to Suzanne Satiacum by Metcalf or others on his behalf. Metcalf claimed to have been involved in an intimate relationship with her. However, she did not succumb to his importunings and did not change her testimony.

Shortly before the date set for trial, the respondent called the prosecutor and attempted a "plea bargain." He offered to plead his clients guilty to burglary and pay

$10,000 "court costs" if the prosecutor would drop charges involving a mandatory minimum sentence. Since he had never known court costs to exceed $750 and no costs had been incurred in that case at the time, the prosecutor took this proposition to be the "opening gambit" to an offer of a bribe.

On the date set for trial, the respondent appeared in court and asked the judge to hear him in chambers. There he asked for a continuance, stating that he had in his possession certain affidavits which had led him to believe that there would be no trial, and therefore he was not prepared. He also asked for a continuance upon the ground that Peterson had informed him he would like separate counsel. The judge indicated that he would deny the motion. In open court, the only ground stated was that Peterson desired separate counsel.

The affidavits were not offered in evidence at the trial, nor were their contents alluded to, either in direct or cross-examination. The burglars were found guilty. *See State v. Montague, supra.*

After the conviction, Metcalf's activities with respect to the case were investigated by a special inquiry judge. The prosecutor visited the respondent in his office and inquired about the affidavits, which he had told the court he had in his possession prior to the Montague-Peterson trial. The respondent looked in the file of these clients but reported that he couldn't find them.

Thereafter the prosecutor, pursuant to the authority granted under RCW 10.27.140, issued a subpoena duces tecum, which was served upon the respondent, requiring him to appear before the inquiry judge and bring the affidavits with him. The respondent immediately telephoned Metcalf. Metcalf went to the respondent's office, where, according to the respondent's testimony, Metcalf's file was laid open on the desk before him and the subpoenaed affidavits were shown to him. Metcalf took the affidavits and left the office. As a result, the respondent appeared before the inquiry judge without the affidavits.

The excuse which the respondent gave the inquiry judge for permitting Metcalf to take the affidavits was that he considered them to be protected by the attorney-client privilege.[2]

On the basis of evidence developed at the inquiry, Metcalf was charged with attempting to bribe a witness and other related offenses. The respondent was a witness at this trial, and consequently withdrew as Metcalf's attorney. Two affidavits of Suzanne Satiacum, executed after the Montague-Peterson trial, and at a time when she was living in California with Metcalf, were introduced. In these affidavits, she asserted that Metcalf had not attempted to bribe her or to persuade her to change her testimony in the Montague-Peterson trial. She also set forth a statement allegedly made by her before the Montague-Peterson trial, in which she said that, in her opinion, if restitution were made, she and her husband would not object to the case being dismissed. This document also stated that the burglars might have had permission to enter the house.

The proposition which had been made to Tanner was that Suzanne Satiacum should testify that the burglars did in fact have permission to enter the house, and that she had not known about it at the time of the burglary. These also were the supposed factual assertions contained in the affidavits which the respondent claimed to have had in his possession at the beginning of the trial. It will be seen that there is a substantial and material difference between these assertions and the affidavits which Suzanne Satiacum later signed for use in the Metcalf trial.

Nevertheless, the evidence showed that the respondent took to the prosecutor Suzanne Satiacum's affidavits which were executed in California and indicated to him that these affidavits were the same as the unsigned affidavits which

[2]See (CPR) DR 7-102(A)(3). In his representation of his client, a lawyer shall not conceal or knowingly fail to disclose that which he is required by law to reveal. (CPR) DR 4-101(C)(2). A lawyer may reveal confidences or secrets of his client when required by court order. RCW 7.20.010(10). Disobedience of a subpoena duly served is contempt of court.

were previously in his possession, and that they would destroy the case against Metcalf.

Examining this series of events, it is impossible not to conclude that the respondent was aware of Metcalf's intentions and purposes in attempting to induce Suzanne Satiacum to change her testimony, and that he knowingly aided him in attempting to achieve those purposes.

The disciplinary board was therefore justified in concluding that the respondent was a knowing participant in the attempt to suborn perjury.

Attempted subornation of perjury is defined in RCW 9.72.110 as follows:

> Every person who, without giving, offering or promising a bribe, shall incite or attempt to procure another to commit perjury, in either degree, or to offer any false evidence, or to withhold true testimony, though no perjury be committed or false evidence offered or true testimony withheld, shall be guilty of a gross misdemeanor.

■ Subornation of perjury is a crime involving moral turpitude. *In re Bixby*, 31 Wn.2d 620, 198 P.2d 672 (1948). The respondent's conduct falls within the prohibition of those provisions of the Code of Professional Responsibility cited by the disciplinary board.

We are in agreement with the disciplinary board that the respondent's repeated and continuing acts of professional misconduct in this case show him to be unfit to practice law. We need not decide whether other actions of the respondent revealed by the evidence in this case constitute other and further violations, since it is determined that, upon the findings made and the conclusions supported by the record, the respondent should be disbarred.

It is so ordered.

STAFFORD, C.J., and HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.