August 22, 1977

M. P. No. 77-284. IN RE ANDREW A. BUCCI. On March 21, 1975, an indictment was filed by the federal grand jury for the District of Connecticut charging the respondent, Andrew A. Bucci, a member of the bar of this state, in a five-count indictment with the violation of 18 U.S.C. §241, conspiracy to injure, oppress, threaten and intimidate a citizen of the United States (count 1); the violation of 18 U.S.C. §1623 and §2, did wilfully suborn, command, instigate, counsel, induce, procure, aid and abet his client to take an oath and make false declaration before the court (counts 2, 3 and 4); and the violation of 18 U.S.C. §371, did conspire to have false declarations under oath given to the court (count 5).[1] On September 3, 1975, the respondent was found guilty by another jury of count 1. On January 30, 1976, he was found guilty by another jury of counts 2, 3, 4 and 5. Subsequently, the trial justice entered a judgment of acquittal on counts 2, 3 and 4. On April 18, 1976, the respondent received a sentence of 10 days, execution suspended, on count 5.

On February 26, 1976, having learned of such conviction, we issued an order in accordance with the provisions of Sup. Ct. R. 43, ordering respondent to appear before us on Thursday, March 11, 1976 at 9:30 a.m., with counsel if he preferred, to show cause, if any he had, why his admission to the bar should not be revoked or suspended.[2]

---

[1]The indictment is based on the claim of one William Marrapese, a former client of respondent, that the latter had advised him to perjure himself in a criminal case in which Marrapese was the defendant and respondent his attorney. Mr. Marrapese was the government's principal witness at respondent's trial.

[2]Sup. Ct. R. 43 reads as follows: "An attorney admitted to practice in this state

The defendant appeared and asked that we postpone any action because of a post-trial motion which he had filed. We acquiesced.

On June 3, 1976, in accordance with the provisions of Sup. Ct. R. 43, we again ordered respondent to appear before this court on Thursday, June 10, 1976 at 9:30 a.m., to show cause why his admission to the bar should not be revoked or suspended. The respondent again appeared and informed us that he had filed an appeal which was pending. He again asked us to postpone any action and we agreed.

On April 15, 1977, having learned that respondent's appeal had been denied, in accordance with the provisions of Rule 43, we again ordered respondent to appear before us on April 21, 1977, to show cause why his admission to the bar should not be revoked or suspended.

The respondent appeared and we offered him an opportunity to provide us with any matters in extenuation or mitigation.

In response respondent submitted a written statement urging us to spare him the ignominy of suspension or disbarment and the resultant hardship which would necessarily follow from such action. He pointed to his prior excellent reputation as a member of the bar of this state, to his excellent standing among his fellow citizens, and to the respect he had enjoyed for so many years in the courts of this and other states where he has tried cases for almost 25 years.

He also brought to our attention the statement made by the United States District Judge concerning Marrapese's testimony when he sentenced respondent. The Judge said:

> "I tried to caution the jury about attaching any credence to his testimony.

---

who is convicted in a court of record of a crime which is punishable by imprisonment for more than one year in this or any other jurisdiction, may, in lieu of or in advance of proceedings pursuant to Rule 42, be ordered to appear before the court to show cause why his admission to the bar should not be revoked or suspended."

"He certainly painted himself as a man who had no regard for the sanctity of an oath and had frequently lied deliberately to Government authorities for his own advantage.

\* \* \*

"I was, throughout that case, sympathetic with the plight of a lawyer who has to try to know all the facts pertaining to his client's defense and is still under an obligation to protect the confidence of his client.

"There is that kind of a knotty problem of what a lawyer's duty is when he knows that his client may be committing perjury or may be going to commit perjury. That's the kind of ethical problem about where there is difference of opinion as to what the right answer is."

The events which resulted in respondent's conviction are recorded elsewhere and require no repetition here other than to point out that we have examined the record in the federal proceedings with care. It is fair to assume from what the trial judge said, that, even though he accepted the verdict of the jury because it rested on credibility, he did not attach much credence to the testimony of Marrapese, the Government's main witness, and probably would not have found respondent guilty if he had heard the case without a jury.

Notwithstanding the trial judge's assessment of Marrapese's testimony, respondent stands before us as a member of the bar of this state who has been convicted according to law of a serious federal offense. We cannot question the integrity of the judgment entered in the District Court or the action of the Circuit Court in affirming that judgment. The respondent's conduct, as evidenced by the record before us, warrants disciplinary action. The troublesome question involves the extent of the disciplinary action which the nature of the charge of which respondent stands convicted compels us to impose. There is no set formula to guide us in perform-

ing our duty, but it is imperative to keep in mind at all times the public interest involved in permitting only persons of integrity to engage in the practice of law. It is true that, by virtue of his conviction in the federal court, respondent's integrity has been severely tarnished.

In evaluating the extent of the disciplinary action we should impose, we are called upon to decide, as it were, whether respondent's integrity has been tarnished beyond repair. In making this judgment we have the benefit of certain comments made by the trial judge. In imposing the 10-day sentence, which he suspended, the trial judge expressly stated that he was satisfied that respondent would never commit this kind of an offense in the future and that he saw no reason for putting him on probation. He also pointed out that so far as the element of retribution or punishment was concerned, respondent would be punished enough by the action that would be taken with respect to his right or privilege to continue to practice law.

Keeping in mind the nature of the charges against the respondent and all of the circumstances surrounding the indictment, trial and conviction, including the comments of the trial judge, we proceed to impose a sanction which we consider appropriate and fair to the public as well as to the respondent. Because we are persuaded that the respondent's integrity has not been damaged beyond repair, we refrain from imposing the sanction of disbarment. Instead, we order that respondent be and he is hereby suspended from engaging in the practice of law beginning one month from the entry of this order and until further order of this court; provided, however, that upon a satisfactory showing of compliance in good faith with this order, he may apply for reinstatement on or after the 22nd day of September 1979, in accordance with the provisions of Rule 42-15 of this Court.[3]

---

[3]On July 27, 1977 respondent filed a motion for leave to file a supplemental brief. By order returned on July 29, 1977 we granted the motion and ordered that such brief be filed on or before August 15, 1977. No brief having been filed, we deem respondent's motion waived.

Mr. Justice Kelleher dissenting. My Brothers have confused the obligation of the trial court with the responsibilities that are ours. The trial justice, in imposing a 10-day suspended sentence, was dealing with the respondent as a citizen, whereas we are dealing with him as a lawyer. We are not concerned with punishment as such but with our duty, as the sole and exclusive regulator of the practice of law within this jurisdiction, to uphold the highest standards of professional conduct, thereby protecting the public from the unfit or unscrupulous practitioner. An attorney's responsibilities differ from those of persons who are not members of the legal profession. Likewise, this Court's duty to the public differs from that of a trial judge who is administering the criminal law.

The underlying issue in a proceeding such as this is to be found in the Lord Mansfield rule promulgated years ago in *Ex Parte Bounsall*, 2 Cowp. 829 (1778):

> "[T]he question is, whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion ... It is not by way of punishment; but the court on such cases, exercise their discretion, whether a man whom they have formerly admitted, is a proper person to be continued on the roll or not."

An application of this rule to a recent disciplinary proceeding in which an attorney was disbarred prompted the following comment from the Maryland Court of Appeals:

> "It is difficult to conceive of a crime which strikes more at the very fundamentals of our system of justice than that of subornation of perjury." *Attorney Grievance Comm'n* v. *Green*, 278 Md. 412, 365 A.2d 39 (1976).

Moreover, in a case remarkably similar to the one before us, the California Supreme Court, in rejecting a lawyer's plea that he not be disbarred for suborning perjury, remarked:

> "For an attorney at law to actively procure or know-

ingly countenance the commission of perjury is utterly reprehensible. It is far more reprehensible within the profession than when committed by one who is not a lawyer. It marks such person as unworthy of the office of attorney. Above all other professions, members of the Bar should be most scrupulous in their honesty; scrupulous in their own conduct and in that which they should not only advise, but exact of their employees, their clients and the witnesses they present to the court." *In re Allen*, 52 Cal. 2d 762, 344 P.2d 609, 134 Cal. Rptr. 411 (1959).

The relevant provisions of our Code of Professional Responsibility dealing with such matters may be found in Canon 7, "A Lawyer Should Represent A Client Zealously Within the Bounds of the Law.":

"EC 7-26. The law and Disciplinary Rules prohibit the use of fraudulent, false, or perjured testimony or evidence. A lawyer who knowingly participates in introduction of such testimony or evidence is subject to discipline. * * *

"* * *

"DR 7-102. Representing A Client Within The Bounds Of The Law.

(A) in his representation of a client, a lawyer shall not:
* * *

(4) Knowingly use perjured testimony or false evidence.
* * *

(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent."

The Supreme Court recently noted that "[a]ny violation of these strictures would constitute a most serious breach of the attorney's duty to the court, to be treated accordingly."

*Geders* v. *United States*, 425 U.S. 80, 90 n.3, 96 S. Ct. 1330, 1336 n.3, 47 L. Ed. 2d 592, 600 n.3 (1976).

One court, after explaining that the primary purpose of a disciplinary sanction was not punishment but the vindication and preservation of the public confidence in the bar and the administration of justice, has suggested that the following criteria be employed in determining the ultimate measure of discipline:

> "(1) a punishment of the offender, which should be sufficient to prevent reoccurrence; (2) a penalty sufficient to deter other practitioners from engaging in such conduct; and (3) punishment sufficient to restore and maintain respect for the honor and dignity of the profession, and to assure those who seek the services of lawyers that the penalties for unprofessional conduct will be strictly enforced." *In re Smith*, 85 Wash. 2d 738, 539 P.2d 83 (1975).

As noted earlier, the leniency of the trial justice's disposition of a criminal offense is irrelevant to the issue before us. Our concern should not be with respondent's criminal predilections but with the maintenance of the integrity of the Rhode Island Bar. The trial justice, I am sure, would not have sat idly by and approved a miscarriage of justice. For support of that statement, we need only look at the judgment of acquittal ordered by the trial justice as to the aiding and abetting counts of the indictment. The trial justice took this action because of a prosecutorial "goof." The government had failed to present any competent evidence indicating that Marrapese was under oath when he testified.[4]

---

[4]Marrapese and several others were being tried before a federal court in Connecticut on charges relating to the interstate transportation of 30 automatic rifles that had been stolen from a Westerly, Rhode Island, armory. Part of the government's case against Marrapese was a tape recording of a conversation between him and an informant who apparently had been in contact with the Rhode Island State Police. The informant had died prior to the trial. When respondent was tried on the perjury counts, the government maintained that the whole point of the perjury was to neutralize the evidentiary impact of the tape recording.

However, when the trial justice considered respondent's motion for a new trial on the conspiracy count, he said that the client's credibility was a question for the jury and "[i]t is not for this court to set that evaluation aside." In reviewing the evidence, the trial justice pointed out that it would support these conclusions: (1) that it was respondent's idea to have Marrapese testify; (2) that respondent developed the plan to explain the electronic tape; and (3) that a rehearsal of the false testimony took place the evening before Marrapese testified. The trial justice also remarked that the jury could have drawn an inference from respondent's failure to produce his law partner, who Marrapese had testified was present during the rehearsal.

At the imposition of sentence, the trial justice did allude to the knotty problem faced by a lawyer who knows or suspects that his client has or is about to commit perjury. However, the trial justice went on to say that the jury "were pretty well cautioned that that was not the basis upon which they were to find guilt or innocence." The transcript indicates that after the trial justice had reminded the jury that respondent had claimed that he did not know Marrapese was going to perjure himself, he then emphasized that a guilty verdict would be in order only if they were convinced that respondent took "some affirmative action of his own designed to make that crime succeed," that he "shared the criminal purposes of Marrapese," or that he "knowingly and willingly participated in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy."

Certainly, if the trial justice had believed the jury's verdict unwarranted, he could have taken appropriate action. I do not believe his remarks should serve as a vehicle which, when employed by the majority, comes perilously close to impeaching the jury's verdict. After the jury has returned a guilty verdict and disciplinary proceedings begin, this court should not go behind the verdict and attempt to reassess the evidence.

When I match the 2-year suspension from the practice of law with respondent's willingness to manufacture evidence, I do believe that this sanction will either vindicate or preserve the public's confidence in the bar or our judicial system. The respondent stands convicted of an offense that impugns the very integrity of our judicial system. This system assumes that litigants, lawyers, and witnesses have but one common goal — the ascertainment of truth. The respondent's conviction is a manifestation of conduct that is contrary to the high standards of honesty and integrity which are demanded and expected of an attorney-at-law.

The clerk's records indicate that respondent became a member of our bar on October 10, 1952. On that day he took an oath which in its pertinent parts reads:

> "I solemnly swear, that in the exercise of the office of attorney and counselor, I will do no falsehood, nor consent to any being done; * * * I will in all respects demean myself as an attorney and counselor of this court and of all other courts before which I may practice uprightly and according to law, with fidelity as well to the court as to my client."

I feel that, once this order is published, the public will look upon the attorneys' oath as just so much rhetoric.

To me, the respondent's breach is "utterly reprehensible" and should be "treated accordingly." Thus, I would and do vote to disbar. Disbarment is the proper remedy, and other courts have shown no hesitancy in employing this sanction in circumstances such as those that are presented to us. *In re Allen, supra; Attorney Grievance Comm'n v. Green, supra; In re Mitchell,* 48 A.D.2d 410, 370 N.Y.S.2d 99 (1975); *Matter of Kerr,* 86 Wash. 2d 655, 548 P.2d 880 (1967); *In re Caffrey,* 71 Wash. 2d 554, 429 P.2d 880 (1967); see also *In re Foster,* 60 N.J. 134, 286 A.2d 508 (1972).

For these reasons, I dissent.